**BAKER et al., Appellants,**

v.

**MERVIS, Appellee.** ▮

[Cite as *Baker v. Mervis* (1989), 63 Ohio App.3d 819.]

Court of Appeals of Ohio,
Clark County.

No. 2511.

Decided Aug. 23, 1989.

*N. Gerald Dicuccio* and *John C. Dowling,* for appellants.

*Howard P. Krisher,* for appellee.

*Per Curiam.*

William R. Baker and Kathy A. Baker appeal from the Clark County Court of Common Pleas' August 22, 1988 judgment entry which granted summary judgment in favor of the defendant, Lawrence J. Mervis, M.D.

On January 28, 1987, William and Kathy Baker filed a complaint which alleged medical malpractice on the part of Dr. Mervis. Kathy Baker alleged loss of services and consortium as a result of Dr. Mervis' alleged negligence. On May 24, 1988, Dr. Mervis filed a motion to dismiss pursuant to Civ.R. 37(B)(2) and 41(B)(1) based on the Bakers' failure to comply with the pretrial order to identify an expert witness by May 1, 1988. On May 27, 1988, Dr. Mervis filed a motion for summary judgment. Mervis argued in the memorandum supporting the motion for summary judgment that the action was barred by the statute of limitations and that the Bakers failed to state a claim for medical negligence.

On June 17, 1988, the parties filed a stipulation whereby the Bakers were given an extension for filing their response to the motion for summary judgment until June 27, 1988. On June 27, 1988, the Bakers filed a motion for an extension of time to respond to the motion to dismiss and motion for summary judgment. Attached to the motion for extension of time was an affidavit by the Bakers' attorney who averred that he was not able to obtain Mr. Baker's X-rays until June 18, 1988, and had not had an opportunity to engage an expert to review the X-rays. On August 2, 1988, the Bakers filed an "identification of expert witness" designating their expert by name and address.

On August 17, 1988, the trial court overruled the Bakers' motion for extension of time. On August 18, 1988, the court filed a decision and entry that excluded the Bakers' expert witness at trial, pursuant to Civ.R. 37(B)(2)(b). The court also filed a decision on August 18, 1988, which stated that summary judgment in favor of Dr. Mervis was appropriate. The court stated:

"The Court finds Plaintiff's cause of action for medical malpractice accrued against Defendant at the latest in July of 1985, upon termination of Defendant's treatment of Plaintiff and Plaintiff's failure to file his complaint thereon until January 29, 1988, constitutes a lapse of more than one year and is a bar to litigation by Ohio Revised Code Sections 2305.11 and 2305.03 and Defendant is entitled to summary judgment thereon.

"* * *

"Dr. Mervis qualified as an expert in neurological surgery, by affidavit he attested to his qualifications, explained the standard of care of a neurological surgeon and that he has done nothing to depart from the neurosurgeon's standard of care and reasonable diligence, nor negligently or unreasonably caused or contributed to injuries allegedly sustained by Plaintiff.

"The only documents before the Court in support of Plaintiff's claims are the complaint, answers to Plaintiff's interrogatories and notice of Plaintiff's independent medical expert. Plaintiff included no doctors reports and therefore, there is no genuine issue of fact presented to the Court.

"Dr. Mervis' affidavit absent any opposing medical expert testimony established the standard of care and his conformance thereto."

The trial court's judgment entry dismissing the case was filed on August 22, 1988. On August 24, 1988, the Bakers filed a motion for relief from judgment. On September 19, 1988, the Bakers filed a notice of appeal from the August 22, 1988, judgment entry. On September 23, 1988, the Bakers filed in this court a motion to remand the case to the trial court to allow it to determine the motion for relief from judgment, which this court sustained on October 12, 1988. On October 6, 1988, the trial court overruled the motion for relief from judgment. On November 2, 1988, this court filed a decision and entry which stated that the case would proceed on the merits.

The Bakers raise three assignments of error in this appeal:

"The trial court erred by dismissing this case on the basis of the statute of limitations for medical malpractice cases.

"The trial court erred and abused its discretion by overruling the plaintiff-appellants' motion for extension of time to respond to motion to dismiss [*sic*] and motion for summary judgment.

"The trial court erred and abused its discretion by overruling the plaintiff-appellants' motion for relief from judgment."

We will address the third assignment of error first.

On December 2, 1988, Dr. Mervis filed with this court a motion to dismiss the third assignment of error pursuant to App.R. 15 and Loc.R. 10 of the Second District Court of Appeals. Dr. Mervis maintained in the supporting memorandum that the Bakers did not file an appeal from the trial court's denial of their motion for relief from judgment. Thus, he argued, this court had no jurisdiction over the third assignment of error. This court's January 13, 1989, decision and entry stated in pertinent part as follows:

"The notice of appeal of the appellants was filed on September 19, 1988, and specifically states that the appeal was taken from the judgment entry of August 22, 1988. The court's decision on the Civil Rules 60(B) motion was filed on October 6, 1988. An examination of the record does not reveal that any notice of appeal was filed from that judgment.

"The motion of the appellee is sustained. The third assignment of error cannot but [sic] be considered by this court because we do not possess jurisdiction to determine an appeal of that matter, as the appellant did not file a notice of appeal from the trial court's October 6, 1988 decision."

Since we have already disposed of the third assignment of error in our January 13, 1989 decision and entry, we will not consider the third assignment of error at this time.

The Bakers argue in their first assignment of error that their complaint was timely filed under R.C. 2305.11, which states in pertinent part as follows:

"(A) An action for libel, slander, malicious prosecution, or false imprisonment, an action for malpractice other than an action upon a medical, dental, optometric, or chiropractic claim, or an action upon a statute for a penalty or forfeiture, shall be commenced within one year after the cause of action accrued * * *.

"(B)(1) Subject to division (B)(2) of this section, an action upon a medical, dental, optometric, or chiropractic claim shall be commenced within one year after the action accrued, except that, if prior to the expiration of that one-year period, a claimant who allegedly possesses a medical, dental, optometric, or chiropractic claim gives to the person who is the subject of that claim written notice that the claimant is considering bringing an action upon that claim, that action may be commenced against the person notified at any time within one hundred eighty days after the notice is so given."

The Bakers rely on *Frysinger v. Leech* (1987), 32 Ohio St.3d 38, 512 N.E.2d 337, as authority for their argument that their complaint was timely filed.

*Frysinger* interprets R.C. 2305.11(A) as follows, at paragraph one of the syllabus:

"Under R.C. 2305.11(A), a cause of action for medical malpractice accrues and the one-year statute of limitations commences to run (a) when the patient discovers or, in the exercise of reasonable care and diligence should have discovered, the resulting injury, or (b) when the physician-patient relationship *for that condition terminates*, whichever occurs later." (Emphasis added.)

The Bakers maintain that the second prong of *Frysinger* applies to this case. They also argue that their "180–day" letter to Dr. Mervis allowed them to file their complaint on January 29, 1987, and still meet the statute of limitations filing requirements under R.C. 2305.11. The Bakers contend that the physician-patient relationship between Mr. Baker and Dr. Mervis ended on November 14, 1985, that the one hundred eighty-day letter was received by Dr. Mervis on August 12, 1986, within one year of the end of the physician-patient relationship, and that the complaint was filed on January 29, 1987, which was within one hundred eighty days of the notice given to Dr. Mervis. The complaint, they contend, was therefore timely filed.

The *Frysinger* court discussed the physician-patient relationship in discussing whether the termination rule should apply to R.C. 2305.11, quoting *Ishler v. Miller* (1978), 56 Ohio St.2d 447, 10 O.O.3d 539, 384 N.E.2d 296:

" ' "The justification for the termination rule is that it strengthens the physician-patient relationship. The patient may rely upon the doctor's ability until the relationship is terminated and the physician has the opportunity to give full treatment, including the immediate correction of any errors in judgment on his part. In short, it was thought that the termination rule is conducive to that mutual confidence which is essential to the physician-patient relationship."

" ' Thus, to require a patient to file suit for malpractice during the course of treatment for a particular injury or disease when he believes or reasonably should believe that he has a malpractice claim would destroy this mutual confidence in the physician-patient relationship. Such a requirement would place the patient in the unacceptable situation of deciding whether to continue the ongoing treatment and thus risk the chance of forfeiting his right to bring suit at a later date, or terminate the relationship, and, perhaps, deny the physician the opportunity of correcting his error.'

"Thus, the termination rule encourages the parties to resolve their dispute without litigation, and stimulates the physician to mitigate the patient's damages. Those worthwhile goals still justify the termination rule, so long as it does not curtail the patient's right to sue after discovering the malpractice injury." *Frysinger, supra,* 32 Ohio St.3d at 41, 512 N.E.2d at 340–341.

■ From our reading of *Frysinger* and review of the record, we conclude that a genuine issue of material fact exists as to whether a physician-patient relationship existed between Mr. Baker and Dr. Mervis until November 14, 1985, as the Bakers contend.

The evidence that the trial court had in deciding the motion for summary judgment included Dr. Mervis's affidavit attached as Exhibit C to his motion for summary judgment. Dr. Mervis averred in his affidavit that he continued to see Baker for check-ups through July 1985, and after that date "there was no ongoing treatment for Mr. Baker's condition." Dr. Mervis added that he had subsequent contacts with Mr. Baker "for purposes of assisting him in the filing of claims for disability and benefits."

The court also had as evidence Mr. Baker's deposition, which was attached as Exhibit A to Dr. Mervis's motion for summary judgment. Mr. Baker stated as follows on pages 102 and 104–105 of his deposition:

"Q. When was the last time you remember seeing [Dr. Mervis] for any reason to ask him about your status?

"A. I thought I saw him—well, in the summer of '86.

" * * *

"Q. Do you know the date when you last saw Dr. Mervis?

"A. No, not the date. I know it was in the summer, but I don't remember the last date that I saw him. It was in the summer but I don't remember the date or anything.

"Q. Now, when you went to see him in the summer of 1986 was it for the purpose of having him write you a report so that you could get full compensation under whatever disability programs you were applying for?

"A. No. Well, it was both. It was when that came back I know I was supposed to see him in six months from the last time which would have been the spring or summer of '86, and when I called or got the appointment, they could both be, I don't know what time the report came but it was for both, I would think, seeing him, plus, you know."

Dr. Mervis's affidavit and Mr. Baker's deposition create a genuine issue of material fact as to when the parties' physician-patient relationship terminated. One of the considerations in determining whether a physician-patient relationship exists is whether the physician has an "opportunity to give full treatment." *Frysinger, supra*, 32 Ohio St.3d at 41, 512 N.E.2d at 340. Nothing suggests that Dr. Mervis did not have the opportunity to give full treatment or provide additional treatment to Mr. Baker until the summer of 1986 when, according to Mr. Baker, his appointments with Dr. Mervis ended.

(The Bakers state that an Attending Physician's Fee Bill was filled out by Dr. Mervis on November 14, 1985, and that this document stated that Dr. Mervis treated Mr. Baker on November 14, 1985. The Attending Physician's Fee Bill is attached as Exhibit A to the Bakers' brief. In our January 17, 1989 decision and entry, we stated that Exhibits A and B, attached to the Bakers' appellate brief, were not before the trial court in determining the motion for summary judgment. Because the Attending Physician's Fee Bill was not before the trial court when the court ruled on the motion for summary judgment, it was not record evidence of a physician-patient relationship, and will not be considered by this court.)

The evidence that was before the trial court in determining the motion for summary judgment, when construed most strongly in favor of the Bakers, raised a genuine issue of material fact as to whether or not a physician-patient relationship existed until November 14, 1985, or, indeed, until the summer of 1986. Summary judgment in favor of Dr. Mervis was improperly granted. The first assignment of error is well taken.

The Bakers argue in their second assignment of error that the trial court erred and abused its discretion by overruling their motion for extension of time to respond to Dr. Mervis's motion to dismiss and motion for summary judgment on August 17, and immediately thereafter ruling on the motions on the following day. The Bakers maintain that the timing of the trial court's August 18 rulings did not give them enough time to respond to the motion to dismiss and motion for summary judgment.

The Bakers had apprised the trial court in their June 27, 1988 motion for extension and supporting affidavit of their problems in obtaining Mr. Baker's CT scan and X-rays from the hospital and engaging an expert. The Bakers argue that these problems prevented them from responding to the motion for summary judgment and, citing *Whiteleather v. Yosowitz* (1983), 10 Ohio App.3d 272, 10 OBR 386, 461 N.E.2d 1331, contend that the trial court should have granted their motion for extension in light of their problems in obtaining an expert witness.

The Bakers notified the court on August 2, 1988, that they had obtained an expert, approximately two weeks before the court filed its August 17, 1988 decision overruling the Bakers' motion for extension of time and its August 18, 1988 decision and entry excluding their previously identified expert at trial.

Sanctions under Civ.R. 37(B)(2) must be "just." The Bakers do not appear to have been unduly lax in their efforts to identify an expert. In their June 27 affidavit, their attorney stated under oath as follows:

"2. At the deposition of Dr. Mervis on March 29, 1988, I discussed obtaining the relevant X-rays with counsel for the defendant. I left the deposition with the impression that the defendant would be supplying us with copies of the X-rays. However, after the filing of these Motions, it has come to my attention that defendant's counsel did not have the same impression.

"3. We were not actually able to obtain the relevant X-rays from the hospitals until June 18, 1988.

"4. We have not been able to engage an expert in this matter due to the inability to obtain the relevant X-rays. We further are unable to present facts essential to justify opposition to the defendant's Motion for Summary Judgment.

"5. An expert should be retained and available for deposition by the defendant's counsel within thirty days."

Although the expert was not identified by court filing within thirty days of June 27, he was identified by August 2. Trial was not scheduled to commence until October 11, 1988.

In our judgment, the action of the trial court was too drastic given the particular circumstances of this case.

The second assignment of error is well taken.

The judgment will be reversed and this case will be remanded for further proceedings in accordance with this opinion.

*Judgment reversed*
*and cause remanded.*

WOLFF, P.J., WILSON and FAIN, JJ., concur.