OPINION
Defendant-appellant ACME Sheet Roofing, Inc., appeals from a judgment awarding plaintiff-appellee Rumpke $3,783.75, along with statutory interest and court costs, with respect to Rumpke's action on an account. ACME argues that the trial court erred by finding that an account with a balance of $639 existed between the parties for services rendered at the Beatty Center job site, because Rumpke failed to present any evidence at trial to demonstrate the existence of that account. ACME also argues that the trial court erred by finding that an account with a balance of $3,144.75 existed between the parties for services rendered at the Barnett Construction job site, because the evidence Rumpke presented to prove that account, i.e., invoices and an accounts receivable record, was insufficient as a matter of law to prove the existence of an account. ACME also contends that the invoices and accounts receivable record were inadmissible hearsay, which did not fit within the business records exception to the hearsay rule, and that the accounts receivable record was inadmissible for the additional reason that Rumpke did not provide ACME with a copy of it during the discovery phase of the trial.
We conclude that the trial court did err by finding that an account with a balance of $639 existed between the parties for services rendered at the Beatty Center job site, because Rumpke failed to introduce any evidence at trial to prove the existence of that account. Accordingly, that portion of the trial court's judgment is Reversed, and judgment is entered in favor of ACME with respect to that part of Rumpke's claim.
With respect to the $3,144.75 account for services rendered at the Barnett Recreation job site, we conclude that the accounts receivable record and invoices introduced into evidence by Rumpke were sufficient to prove the existence of that account. We further conclude that those documents were admissible pursuant to the business records exception to the hearsay rule. Nevertheless, we conclude that the accounts receivable record should have been turned over to ACME during the discovery phase of the trial, and that the trial court erred when it found that no discovery violation had occurred. Accordingly, the remaining portion of the trial court's judgment is Reversed, and this part of the cause isRemanded for proceedings consistent with this opinion.
 I
Rumpke provides trash removal services to its customers throughout Ohio. ACME repairs and replaces roofs. ACME contracted with Rumpke to remove construction debris from several of its construction sites.
In July, 1997, Rumke filed a Complaint Upon An Account in the Dayton Municipal Court, alleging that ACME owed it $3,878.09 upon an account. Rumpke attached copies of six invoices to its complaint, which ACME alleged constituted the account. Five of the invoices pertained to services Rumpke performed for ACME at the Barnett Recreation Center. The remaining invoice, totaling $639, pertained to services Rumpke performed for ACME at the Beatty Center. Rumpke also brought claims for implied contract and unjust enrichment. ACME filed an answer denying the material allegations in Rumpke's complaint.
A trial was held on Rumpke's complaint in July, 1998. In order to prove its action on an account, Rumpke offered eight exhibits into evidence, through the testimony of its credit manager, Nancy Peters. Exhibits 2 through 6 were the five invoices relating to the Barnett Recreation site, which had been attached to Rumpke's complaint. Exhibits 7 and 8 were credits that Rumpke had made to ACME's account involving amounts for which it had overcharged ACME. Exhibit 1 was an accounts receivable "reconciliation" statement that had been printed out by Rumpke several days before trial. The trial court admitted Rumpke's exhibits over ACME's objections that the records did not fall within the business records exception to the hearsay rule, and that Rumpke had failed to provide it with Exhibit 1 during discovery.[1] Rumpke did not introduce any evidence at trial
to prove its claim that ACME owed it $639 on an account for services rendered at the Beatty Center job site — not even the invoice for that amount, which had been attached to its complaint.
ACME's owner, Alan Hatton, testified that he had issued a $5,112.10 check to Rumpke in September, 1995. However, during its re-cross of Hatton, Rumpke demonstrated that it had applied the $5,112.10 check (check no. 1129) to the outstanding balances owed by ACME for services rendered at the Tuttle Recreation Center and Tuttle Driving Park, as well as for services rendered at the Barnett Recreation Center, prior to the services for which ACME was charged by way of the invoices set forth as Exhibits 2 through 6. Although Hatton asserted that Rumpke had overcharged him for the services provided at Tuttle Recreation, Tuttle Driving Park, and the previous work done at Barnett Recreation, he never testified about the specific amount by which he had been allegedly overcharged.
At the request of the trial court, the parties filed proposed findings of fact and conclusions of law. One of Rumpke's proposed findings of fact stated: "[t]he Beatty Center invoice in the amount of $639.00, attached to Plaintiff's Complaint as Exhibit A, was undisputed by either party."
In January, 1999, the trial court rendered its own Findings of Fact and Conclusions of Law, finding that "Rumpke claims an outstanding balance of $3,878.09, which includes an undisputed amount on the Beatty job[,]" and concluding that "Rumpke ha[d] proven by a preponderance of the evidence that ACME owes it $3,144.75 on the Barnett Recreation job and $639.00 on the Beatty Center job." The trial court noted that the total of these two amounts equaled $3,783.75, rather than $3, 878.09, as Rumpke had claimed. Accordingly, the trial court entered judgment for Rumpke in the amount of $3,783.75, plus statutory interest and court costs.
ACME appeals from the trial court's judgment.
 II
ACME's Fifth Assignment of Error states:
 THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY GRANTING JUDGMENT FOR $639.00 BASED ON AN INVOICE THAT WAS NEITHER OFFERED NOR ADMITTED INTO EVIDENCE AND WAS NOT TESTIFIED TO AT TRIAL.
ACME argues the trial court erred in entering judgment for Rumpke in the amount of $639, with respect to the Beatty Center job site, because Rumpke never offered any evidence at trial to prove the existence of that account. We agree.
In the third paragraph of its complaint, Rumpke alleged that "Defendant owes Plaintiff the sum of $3,878.09 upon an account. Copies of said account are attached hereto as Exhibit A." The "[c]opies of said account" that Rumpke attached to its complaint were copies of six invoices, five of which pertained to services rendered at the Barnett Recreation job site. The sixth invoice, totaling $639, pertained to services rendered at the Beatty Center job site. In paragraph three of its answer, ACME responded, "Defendant specifically denies the allegations in paragraph 3 of the complaint."
"The essential purpose of the answer is to `put in issue' those allegations of fact which the plaintiff must prove at trial." 1 Klein Darling Civil Practice (1997) 645, Section 8-8. If the defendant admits an allegation made by plaintiff, the matter admitted does not have to be proven at trial. Rhoden v.Akron (1988), 61 Ohio App.3d 725, 728. Conversely, if the defendant denies an allegation made by plaintiff, the plaintiff must then present evidence at trial in order to prove the matter denied, if the matter is material to his claim.
Here, by denying Rumpke's allegation that it owed $3,878.09 on an account, ACME placed that issue in contention. As a result, it became incumbent upon Rumpke to present evidence demonstrating that ACME owed $3,878.09 on an account that existed between the parties, including the $639 for services rendered at the Beatty Center job site. However, the only evidence that Rumpke introduced at trial concerned the $3,144.75 that ACME allegedly owed for services rendered at the Barnett Recreation job site. Rumpke did not introduce any evidence at trial — not even the $639 invoice attached to its complaint — to establish that ACME owed $639 on an account for services rendered at the Beatty Center job site.
In its proposed Findings of Fact and Conclusions of Law, Rumpke attempted to "paper over" its omission by representing to the trial court that "[t]he Beatty Center invoice in the amount of $639.00, attached to Plaintiff's Complaint as Exhibit A, was undisputed by either party." The trial court accepted this representation as true, stating in its own "Findings of Fact" that "Rumpke claims an outstanding balance of $3,878.09, which includes an undisputed amount on the Beatty job." However, Rumpke's representation was incorrect, since, in its answer, ACME did
dispute Rumpke's allegation that ACME owed it $3,878.09 for services rendered at the Beatty Center and Barnett Recreation job sites. Because Rumpke failed to introduce any evidence at trial
establishing that ACME owed it a $639 balance on an account for services rendered at the Beatty Center job site, the trial court erred by not entering judgment in favor of ACME with respect to that portion of Rumpke's complaint.
ACME's Fifth Assignment of Error is sustained.
 III
Smith's First, Second, Sixth, and Seventh Assignments of Error state, as follows:
 I. THE JUDGMENT IS CONTRARY TO, AND AGAINST THE MANIFEST WEIGHT OF, THE EVIDENCE.
II. THE JUDGMENT IS CONTRARY TO LAW.
 VI. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY ACCEPTING INADMISSIBLE TESTIMONY CONCERNING THE CONTENTS OF INVOICES, NOT ADMISSIBLE IN EVIDENCE.
 VII. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN AWARDING JUDGMENT FOR PLAINTIFF ON AN ACCOUNT FOR $3,144.75 WHERE SUCH AN ALLEGED BALANCE WAS NOT SUPPORTED BY A LEGAL ACCOUNT OR INVOICES AND WAS NOT SHOWN TO HAVE BEEN SENT TO THE DEFENDANT.
ACME argues that the trial court erred by awarding Rumpke $3,144.75 on its action on an account for services rendered at the Barnett Recreation job site, because Rumpke failed to prove an account balance owed by ACME for that amount. ACME also asserts that the trial court's judgment awarding Rumpke $3,144.75 was against the manifest weight of the evidence.
An action on an account is founded upon contract, and exists to avoid the multiplicity of suits that would be necessary if each transaction between the parties would be construed as constituting a separate cause of action. Am. Sec. Serv. v. Baumann (1972),32 Ohio App.2d 237, 242. The cause of action exists only as to the balance that may due one of the parties as a result of the parties' transactions, and not as to each item of the account.Id. Civ.R. 10(D) requires that a copy of an account be attached to the complaint. Civ.R. 10(D) does not define what the requirements of an account are, but case law has stated that an account must contain:
 "(1) a beginning balance (zero, or a sum that can qualify as an account stated, or some other provable sum); (2) listed items, or an item, dated and identifiable by number or otherwise, representing charges, or debits, and credits; and (3) a summarization by means of a running or developing balance, or an arrangement of beginning balance and items which permits the calculation of the amount claimed to be due." [Citation omitted.] Absolute certainty of proof is not required, but there must be something upon which the court can form its judgment. [Citation omitted.] Gabrielle v. Reagan (1988), 57 Ohio App.3d 84, 87.
Generally, a copy of a ledger sheet, or an accounts receivable record will meet the requirements of an account. Brownv. Columbus Stamping Mfg. Co. (1967), 9 Ohio App.2d 123, 126. However, the business record offered to prove the account is admissible only if it falls within the business records exception to the hearsay rule, contained in Evid.R. 803(6). See Baumann,supra, at 240 (referring to the business records exception to the hearsay rule contained in former R.C. 2317.40, now superceded by Evid.R. 803[6]). An action on an account may also be proved by oral testimony based upon firsthand knowledge, since the word "account" in the phrase "action on an account" refers to the type of relationship between the parties, and not to a particular business record. Baumann, supra, at 244-245.
Citing Brown, supra, ACME initially argues that the invoices contained in Exhibits 2 through 6 are insufficient to prove the existence of the account for the Barnett Recreation job site, since invoices are inadmissible in evidence.
Brown does state that "[i]nvoices do not constitute an account and neither are they admissible as evidence." However, inAMF, Inc. v. Mravec (1981), 2 Ohio App.3d 29, the court refused to follow Brown, holding, instead, that invoices are admissible in evidence so long as they qualify for admission under the business records exception to the hearsay rule. Mravec, supra, at 33. We conclude that Mravec represents the better view, especially in light of the fact that Brown does not even mention the business records exception to the hearsay rule (which, at the time Brown
was decided, was found in R.C. 2317.40, and is now found in Evid.R. 803[6]).
Nevertheless, the invoices contained in Exhibits 2 through 6 do not contain the necessary requirements of an account, because they do not contain a running or developing balance, nor an arrangement of beginning balance and items which permits the calculation of the amount claimed to be due. For instance, the invoices contained in 2 through 6 total $8,257.77, and the credits contained in Exhibits 7 and 8 total $3,302.50. The difference between the amounts of the invoices and credits, which totals $4,955.27, does not correlate with the $3,144.75 figure that Rumpke claims is owed on the account for services rendered at the Barnett Recreation job site. Thus, the invoices, standing alone, do not provide a basis from which the trial court could have awarded Rumpke the $3,144.75 that it claims ACME owes it for services rendered at the Barnett Recreation job site.
Nevertheless, the accounts receivable record contained on the first page of Exhibit 1, while not perfect, does contain the necessary requirements of an account. The record, entitled "Rumpke Consolidated Companies A/R Reconciliation," contains ACME's name, address, and account number. The record shows a zero balance with respect to ACME's account with Rumpke as of October 23, 1995. Each of the five invoices admitted as Exhibits 2 through 6 are listed, by invoice number, on the record, along with the credits that were applied to the invoices, including the credits set forth in Exhibits 7 and 8. When the credits are applied to the applicable invoices, and the invoices are added together, the amount equals $3,144.75 — the amount that Rumpke claims is owed.
ACME argues that the accounts receivable record was insufficient to meet the requirements of an account because it includes invoice numbers that are not a part of this action, while it omits the invoice number for Exhibit 6. ACME also charges that the zero balance contained on the record is inaccurate, since Rumpke had invoiced ACME for charges incurred prior to those represented by the invoices contained in Exhibits 2 through 8. We find these contentions unpersuasive.
First, contrary to what ACME alleges, Exhibit 1 does contain the invoice number (as well as the invoice amount) for Exhibit 6. Second, while Exhibit 1 does contain invoice numbers involving services that were not at issue in this action, it has been held that "to constitute an account, it is not necessary that every transaction that has transpired between the parties be included during the entire existence of their business relationship,although such also would represent an account." Wolf Automotivev. Rally Auto Parts, Inc. (1994), 95 Ohio App.3d 130, 134. (Emphasis added.) Thus, the fact that the accounts receivable record contained in Exhibit 1 included invoice numbers involving transactions that were not a part of this action, does not disqualify it from serving as an account. Third, there was evidence in the record to support the entry in the accounts receivable record, indicating that a zero balance existed between the parties as of October 23, 1995. While Rumpke did, in fact, perform services for ACME, previous to the ones at issue here, the evidence showed that Rumpke had applied the $5,112.10 check that ACME had issued to it on September 25, 1995, to pay the outstanding balance that was due for that earlier work.
Rumpke also asserts that the trial court's judgment was against the manifest weight of the evidence. We disagree. Judgments supported by some competent, credible evidence will not be reversed as being against the manifest weight of the evidence.Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80. Here, Rumpke presented competent credible evidence demonstrating that an account with a balance of $3,144.75 existed between the parties for services rendered at the Barnett Recreation job site.
ACME also argues that Rumpke should have sent it a copy of the accounts receivable record contained in Exhibit 1 so that it would know why it was being charged the amount Rumpke claims was due, particularly where Rumpke, itself, acknowledged that there had been overcharges in the account. However, Rumpke's credit manager, Nancy Peters testified that, while Rumpke never sent ACME a copy of the accounts receivable record contained in Exhibit 1, Rumpke did provide ACME "with the same sort of information but in a different format." In any event, ACME has cited no authority for its proposition that a creditor must demonstrate that it has sent a copy of the account to its debtor before it brings an action on an account, and we have found none.
ACME's First, Second, Sixth, and Seventh Assignments of Error are overruled.
 IV
ACME's Third Assignment of Error states:
 THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ADMITTING AND BASING ITS DECISION ON, AND ALLOWING TESTIMONY ABOUT, DOCUMENTARY EVIDENCE THAT WAS NOT WITHIN THE BUSINESS RECORDS EXCEPTIONS TO THE HEARSAY RULE IN EVID. RULE 803(6), AND INCLUDING AN EXHIBIT PREPARED FOR USE AT TRIAL.
ACME asserts that Exhibits 1 through 8 were inadmissible on grounds that they constitute hearsay and do not fit within the hearsay exception for business records contained in Evid.R. 803(6). Evid.R. 803(6) excepts from the operation of the hearsay rule:
 [a] memorandum, report, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901(B)(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.
In order to lay a proper foundation for the admission of a business record, the proponent of the document must demonstrate that:
 (i) the record was prepared by an employee of the business who had a duty to report the information; (ii) the person providing the information contained in the record had personal knowledge of the event or transaction reported; (iii) the record was prepared at or near the time of the event or transaction; and (iv) it was a regular practice or custom of the business in question to prepare and retain the type of record.
 McCormick v. Mirrored Image, Inc. (1982), 7 Ohio App.3d 232,233.
 A
Rumpke sought to admit the accounts receivable record contained in Exhibit 1 through the testimony of its credit manager Nancy Peters. When asked how Exhibit 1 was created, Ms. Peters replied, "we have an option on our computer to select customers and pull up their accounts receivable." Ms. Peters indicated that the information in the accounts receivable record is entered into the computer at the time of sale. Ms. Peters also testified that it was Rumpke's practice to make such records. Under cross-examination, Ms. Peters testified that Exhibit 1 was printed out several days before trial. When ACME's counsel asked her if Exhibit 1 was prepared for use at trial, Ms. Peters replied, "Correct. Everything is computerized. All I need to do is hit an F function key, and it prints out the account."
ACME's counsel moved to have Exhibit 1 excluded from evidence on the ground that it was not a business record, but merely a "work product of counsel" that was prepared for use at trial. The trial court agreed that Exhibit 1 was not a business record, since it had been "prepared in preparation for this trial." Nevertheless, the trial court admitted Exibit 1 anyway, finding that it was "very helpful," because it summarized the remaining exhibits (Exhibits 2 through 8).
Initially, the trial court's decision to admit Exhibit 1 over ACME's hearsay objection on the basis that it was "very helpful," was erroneous. Generally, a hearsay document that does not fit within any of the recognized exceptions to the hearsay rule is unreliable as a matter of law, and, therefore, cannot be admitted on grounds that it is "very helpful." See generally, BeavercreekLocal School Dist. v. Basic, Inc. (1991), 71 Ohio App.3d 669, 676. Of course, if Exhibit 1 merely summarized Exhibits 2 through 8, as the trial court stated, then any error in its admission could be deemed harmless, since in that instance, the evidence would merely be cumulative of other evidence properly admitted (assuming for the moment that Exhibits 2 through 8 were properly admitted). However, for the reasons stated in part III of this opinion, Exhibit 1 was vital to Rumpke's efforts to prove the elements of an account. Therefore, its admission cannot be viewed as harmless.
Notwithstanding the observations mentioned above, the trial court should have admitted Exhibit 1 under the business records exception to the hearsay rule. Documents that are prepared for use at trial, rather than in the ordinary course of business are not admissible under the business records exception to the hearsay rule contained in Evid.R. 803(6). See, e.g., Baumann, supra, at 241. Here, ACME's questioning of Ms. Peters made it appear that the accounts receivable record contained in Exhibit 1 was preparedmerely for trial. However, a careful examination of Ms. Peters's testimony actually reveals that the accounts receivable record was, in fact, prepared in the ordinary course of Rumpke's business, and that it was merely printed out a few days prior to the trial, for its additional use therein.
There are some aspects of Exhibit 1 that do not appear to have been records made and kept in the ordinary course of business. For instance, there are some handwritten notations next to several of the columns on the accounts receivable record. However, even if these handwritten notations are redacted, as they should have been, the information that remains is still sufficient to demonstrate an account. For instance, there are handwritten notations next to each invoice number indicating whether the invoice was for services rendered at the Barnett Recreation job site, which were at issue in this case, or for services rendered at the Tuttle Recreation job site, which were not. However, the invoice numbers on Exhibits 2 through 8 match seven of the invoice numbers appearing on the first page of Exhibit 1. Those invoice numbers can be used to separate the transactions that are at issue in this case, from the ones that are not. Additionally, the third page of Exhibit 1 appears to have been an attempt to summarize the contents of the first two pages, and, therefore, may not have been a record made and kept in the regular course of business. Again, however, even without this summary, the remainder of Exhibit 1 is sufficient to establish an account.
Accordingly, the trial court's decision to admit Exhibit 1 was correct, even though the reasons it gave for admitting the document were not. A reviewing court is not authorized to reverse a correct decision simply because erroneous reasons have been assigned as a basis thereof. See United States Fid. Guar. Co.v. St. Elizabeth Med. Ctr. (1998), 129 Ohio App.3d 45, 57.
 B
Rumpke also sought to admit the invoices contained in Exhibits 2 through 8, through the testimony of Ms. Peters. ACME argues that because Ms. Peters was not the supervisor of the employees at Rumpke's Circleville office — the place from where the invoices in question originated — she lacked the personal knowledge necessary to lay a proper foundation for the admission of the invoices. We disagree.
The foundation requirement for admitting a document pursuant to the business record exception to the hearsay rule contained in Evid.R. 803(6) may be satisfied by the testimony of anyone who is familiar with the manner in which the record sought to be admitted was prepared, even if the witness lacks firsthand knowledge of the matter reported, and even if he did not prepare the record or observe its preparation. Miller v. Fairchild Industries,Inc.(C.A.9, 1989), 876 F.2d 718, 733. Indeed, it is not even necessary for the sponsoring witness to have been employed by the business at the time the record was created, in order for the record to be admissible. Id.; State v. Davis (1991), 62 Ohio St.3d 326,342. Thus, the fact that Ms. Peters was not the supervisor of the employees at the office from where the invoices originated did not make her testimony regarding the invoices "incompetent," as ACME argues. Accordingly, the trial court did not err in admitting Exhibits 2 through 8 pursuant to Evid.R. 803(6).
ACME's Third Assignment of Error is overruled.
 V
ACME's Fourth Assignment of Error states
 THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ALLOWING TESTIMONY ON, AND ADMITTING INTO EVIDENCE, DOCUMENTS TO SUPPORT AN ALLEGED ACCOUNT, THAT WERE NOT PRODUCED AS REQUESTED IN PRETRIAL DISCOVERY.
ACME argues that the trial court erred by finding that Rumpke did not commit a discovery violation by failing to provide ACME with a copy of Exhibit 1 during discovery, and abused its discretion by not ruling Exhibit 1 inadmissible as a sanction for the discovery violation.
When Rumpke's counsel sought to have Exhibit 1 admitted in evidence, ACME's counsel objected, arguing that ACME had asked Rumpke "for all the documents making up the account[,]" and that Rumpke had responded by providing them with the invoices, but not the accounts receivable record contained in Exhibit 1. Rumpke's counsel responded that ACME
 asked for all documents that make up their claim. They did not ask for any exhibits that we might use, just the documents that support that; and we faxed them those documents. We provided those documents.
The trial court overruled the objection raised by ACME's counsel, finding, implicitly, that no discovery violation had occurred.
The trial court erred by finding that no discovery violation occurred. It was undisputed by Rumpke that ACME requested "all documents making up the account," and that Rumpke only provided them with the invoices and credits contained in Exhibits 2 through 8. For the reasons we stated in Part III of this opinion, those records were insufficient to constitute an account. The accounts receivable record in Exhibit 1 was sufficient to constitute an account, but Rumpke failed to turn it over to ACME during discovery as ACME had requested. Contrary to what Rumpke's counsel stated, the accounts receivable record was one of the "documents that make up their claim." Therefore, it should have been turned over to ACME during discovery as requested.
Nevertheless, even if the trial court had found, as it should have, that a discovery violation had occurred, the trial court still would not have abused its discretion by refusing to exclude Exhibit 1 from evidence. A trial court has great latitude in crafting sanctions to fit discovery violations, and the trial court's decision regarding what sanction to impose is not to be reversed on appeal absent an abuse of discretion. Nakoff v.Fairview Gen. Hosp. (1996), 75 Ohio St.3d 254, 256. However, the sanction imposed for a discovery violation must be "just." Bakerv. Mervis (1989), 63 Ohio App.3d 819, 825. Generally, the purpose behind imposing sanctions for discovery violations is not to impose punishment for the violation, but to remedy the prejudice created thereby. Getter v. Getter (1993), 90 Ohio App.3d 1, 5. Therefore, whenever possible, a trial court should impose the least severe sanction available to remove the prejudice caused by the discovery violation. Transamerica Ins. Group v. Maytag, Inc.
(1994), 99 Ohio App.3d 203, 207.
The trial court in the case before us would have acted well within its discretion if it had simply given ACME additional time to adjust its defense in light of the new evidence, rather than impose the harsh sanction of excluding Exhibit 1. Indeed, it has been held that a trial court does not abuse its discretion by allowing a defendant's expert witness to testify despite defendant's failure to provide plaintiff with the witness's name during discovery, where the trial court gave plaintiff's attorneys time to read the witness's report before he testified, and where plaintiff's attorneys did not ask for a sanction less severe than the exclusion of the witness, e.g., a recess or continuance to take the witness's deposition. Cucciolillo v. East Ohio Gas Co.
(1980), 4 Ohio App.3d 36, 38.
Here, however, the trial court erroneously found that a discovery violation had not occurred; thus, ACME's counsel never had the opportunity to ask for a sanction less severe than exclusion. Accordingly, we conclude that the proper remedy is to grant ACME a new trial with respect to the account regarding the Barnett Recreation job site.[2]
ACME's Fourth Assignment of Error is sustained to the extent indicated.
 VI
In addition to its action on an account, Rumpke brought claims in the alternative for implied contract, and unjust enrichment. The trial court did not rule on these claims, given its conclusion that an account existed between the parties for $3,783.75, covering both the Barnett Recreation and Beatty Center job sites. Before we remand this case for a new trial (with respect to the account for services rendered at the Barnett Recreation job site), we need to determine whether Rumpke should have prevailed on these alternative theories.
At trial, Rumpke did not present any evidence demonstrating that a contractual or quasi-contractual relationship existed between the parties regarding services allegedly rendered at the Beatty Center job site. Therefore, Rumpke cannot prevail on its alternative theories of implied contract or unjust enrichment, with respect to the $639 account for services allegedly rendered at the Beatty Center job site.
Rumpke did present evidence attempting to show that ACME would be unjustly enriched if it were allowed to retain the benefits of the services Rumpke performed for it at the Barnett Recreation job site, without paying for them. It also argued in its proposed findings of fact and conclusions of law that an implied contract existed between the parties for the Barnett Recreation job site. However, the evidence presented at trial demonstrated that an express contract existed between the parties with respect to the services performed at the Barnett Recreation Center.
The difference between an express contract and an implied contract (i.e., a contract implied-in-fact) is that in express contracts, assent to the terms of the contract is actually expressed in the form of an offer and acceptance, whereas in implied contracts, the parties' assent or "meeting of the minds" is inferred from the surrounding circumstances, including the parties' conduct and declarations, which show that the contract exists as a matter of tacit understanding. Stepp v. Freeman
(1997), 119 Ohio App.3d 68, 74. Here, the evidence demonstrated that the parties' assent to the contract terms was express, not tacit. Therefore, Rumpke cannot prevail on a theory of implied contract.
Furthermore, Rumpke cannot prevail on its unjust enrichment claim (a "contract implied-in-law"), because, in the absence of fraud or bad faith, recovery for unjust enrichment is prohibited where an express contract covers the same subject. WildnerContracting v. Ohio Turnpike Comm. (N.D.Ohio 1996),913 F. Supp. 1031, 1043; see, also Weiper v. W.A. Hill Assoc. (1995),104 Ohio App.3d 250, 262 (a party seeking a remedy under a contract cannot also seek equitable relief for unjust enrichment since compensation is governed by the terms of the parties' contract absent bad faith, fraud, or illegality).
In light of the foregoing, Rumpke cannot prevail on its alternative claims for implied contract or unjust enrichment with respect to the Barnett Recreation account. Therefore, this cause must be remanded for a new trial with respect to Rumpke's claim that an account with a balance of $3,144.75 exists between the parties for services rendered at the Barnett Recreation job site.
 VII
ACME's Fifth Assignment of Error having been sustained, the portion of the trial court's judgment awarding Rumpke $639, with respect to the Beatty Center job site, is Reversed, and judgment is entered for ACME with respect to that portion of Rumpke's claim. ACME's First, Second, Third, Sixth, and Seventh Assignments of Error having been overruled, but ACME's Fourth Assignment of Error having been sustained to the extent indicated, the remainder of the trial court's judgment is Reversed, and this part of Rumpke's cause is Remanded for proceedings consistent with this opinion.
GRADY, P.J., and YOUNG, J., concur.
Copies mailed to:
Yale R. Levy
A. Mark Segreti, Jr.
Hon. Alice McCollum
[1] ACME's counsel also alleged at trial that Rumpke had failed to provide it with Exhibits 7 and 8 during discovery. However, ACME acknowledges on appeal that Rumpke did, in fact, provide it with Exhibits 7 and 8 prior to trial.
[2] Not only should Rumpke have turned over the accounts receivable record to ACME during discovery, Rumpke also should have attached a copy of the accounts receivable record to its complaint, pursuant to Civ.R. 10(D). If Rumpke had turned over the accounts receivable record to ACME during discovery, then no prejudice would have inured to ACME, as a result of Rumpke's failure to comply with Civ.R. 10(D). Nevertheless, ACME has not raised Rumpke's failure to comply with Civ.R. 10 as an assignment of error. Even if it had, the result would have been the same: ACME would have been entitled to a reversal of the trial court's judgment, but the cause would have been remanded. On remand, Rumpke would have been permitted to seek leave to amend his complaint, pursuant to Civ.R. 15(A), and leave should have been "freely given," since justice would require it.